IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| SUSAN HOSHIDA, | Case No. 3:26-cv-627-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. |  |
| JOSEPH HORSFALL, BRETT MONSON, ADAM BOOTH, and LEGACY CAPITAL VENTURES LLC, |  |
| Defendants. |  |

Thomas G. Bode, Jr., LARKINS VACURA KAYSER LLP, 121 SW Morrison Street, Suite 700, Portland, OR 97024. Of Attorneys for Plaintiff.

Nathan R. Morales and Cameron C. Zangenehzadeh, STOEL RIVES LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

Susan Hoshida ("Hoshida") originally sued Joseph Horsfall, Brett Monson, Adam Booth, and Legacy Capital Ventures LLC ("Legacy") (collectively, "Defendants") in state court, and Defendants removed the action to this Court. Hoshida loaned money to CuraVentuRx Holdings, LLC ("CVR") and received a promissory note in return (the "Note"). Hoshida contends that she was induced to make this loan through material misrepresentations and omissions of material fact made by CVR and its agents. Hoshida alleges that this transaction constitutes a sale of a

PAGE 1 – OPINION AND ORDER

"security" in violation of Oregon Revised Statute ("ORS") § 59.115(1)(b). Defendants are all directors, officers, or members of CVR. As her only claim against Defendant, Hoshida alleges that they are liable for CVR's sale of a security through misrepresentation or omission, under ORS § 59.115(3). Now before the Court is Defendants' motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that the Note is not a "security" under Oregon law and, thus, they cannot be liable under § 59.115(3). The Court held oral argument on June 11, 2026. For the reasons stated at oral argument and as further explained below, the Court denies Defendants' motion to dismiss.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

PAGE 2 – OPINION AND ORDER

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

Hoshida is an individual investor residing in Oregon. Compl. ¶ 2 (ECF 1-1). CVR is a Nevada limited liability company holding itself out to be a business venture for acquiring pharmacies, improving their profitability, and returning profits to investors. *Id.* ¶¶ 9-10. Joseph Horsfall is the President and Chief Executive Officer of CVR. *Id.* ¶ 3. Brett Monson is CVR's Executive Chairman. *Id.* ¶ 4. Adam Booth is CVR's Chief Operating Officer. *Id.* ¶ 5. Legacy is one of the managing members of CVR. *Id.* ¶ 6. Hoshida also alleges that Defendants directly or indirectly control CVR. *Id.* ¶ 41.

In February 2025, CVR emailed an investment solicitation to Hoshida. *Id.* ¶ 15. CVR sought $600,000 to "cover an increase in purchase price and 'pre-closing operational costs for enterprise systems.'" *Id.* (quoting CVR's solicitation). The investment solicitation further stated:

> Earn a substantial, fixed return on your money in relatively short time. CuraVentuRx Holdings LLC (CVR) is in the final stages of acquiring a set of 10 pharmacies that are established, profitable, and stable. We're opening a limited investment opportunity to raise up to $600,000 with a high-yield payout on a 6-month note. The opportunity is backed by a private equity fund, with senior debt from JP Morgan Chase. Financing disbursement expected on or

> before April 30, 2024. Why invest? 1. De-risked position: Your investment is de-risked by the senior debt from JP Morgan Chase, ensuring you are repaid by closing proceeds. 2. High-earnings in a Short Time: Your return is fixed at 35% of invested capital, with full repayment of principal and your return within 6 months or within 10 days of closing, whichever comes first.

*Id.*

CVR also allegedly explained that Hoshida's investment would be used for acquisition costs, specifically "pre-close systemization for seamless ownership transition, improving pharmacy performance immediately upon acquisition;" for "immediate operations;" and for providing "working capital for immediate operational needs." *Id.* ¶ 16. CVR also stated that "the fund has allocated more than $2.5 [million] to repay bridge . . . financiers from the closing proceeds, covering the cost of bridge capital and more." *Id.* ¶ 17. CVR's email and related video communications with Hoshida were made through Monson and Horsfall. *Id.* ¶ 34. Monson and Horsfall also signed the executive summary of the investment solicitation. *Id.* ¶ 35.

Hoshida agreed to invest $600,000 in CVR. *Id.* ¶ 18. On March 5, 2025, Hoshida and CVR signed the Note. *Id.* The Note states: "The Company [CVR] is in the business of acquiring and operating pharmacy businesses" and "the Company intends to use the Loan . . . to acquire, own, and manage one or more pharmacies and other business related thereto located throughout the United States." *Id.* ¶ 19.[1] The Note also states: "The Lender is entering into this Agreement and thereby making the Loan to the Company for the Lender's own account, for *investment* only." *Id.* ¶ 20 (emphasis added). The Note further provides a maturity date of the sooner of 180 days after signing or 10 days after the closing of the pharmacies acquisition. *Id.* ¶ 18. At

---

[1] Hoshida did not attach a copy of the Note to her Complaint, but the Complaint purports to quote the Note directly.

PAGE 4 – OPINION AND ORDER

maturity, CVR agreed to pay the principal plus 35 percent interest. *Id.* If CVR failed to pay the note at maturity, interest would then accrue at 13 percent per year, according to the Note. *Id.*

On May 12, 2025, CVR emailed Hoshida to state that the closing on the purchase of the pharmacies was delayed. *Id.* ¶ 23. On the new scheduled closing date, June 2nd, CVR emailed Hoshida to state that "nothing impactful has gotten in the way and both parties are moving forward in earnest." *Id.* ¶ 24. On August 2nd, CVR notified Hoshida by email that CVR had decided to "terminate the current pharmacy transaction" but represented that it was "moving forward with a stronger path backed by the fund." *Id.* ¶ 25.

On September 6, 2025, the Note matured and CVR defaulted. *Id.* ¶ 26. On October 31, 2025, CVR emailed Hoshida, explaining that it did not have enough cash on hand to make any payment on the Note and that "the company has no existing assets on its balance sheet." *Id.* ¶ 27. Despite repeated requests by Hoshida, CVR failed to account for her $600,000 investment. *Id.* ¶ 33.

In her Complaint, Hoshida alleges several material misrepresentations and omissions of material facts. *Id.* ¶¶ 29-32. These include:

> 1. CVR stated it would use Hoshida's investment to acquire pharmacies, but no deal ever materialized and CVR never accounted for or returned the funds. *Id.* ¶¶ 1, 22-25, 29.
>
> 2. CVR concealed the risk of the investment, including by stating CVR was in the "final stages" of acquiring ten pharmacies, claiming that JP Morgan Chase was involved, meaning the investment was "de-risked," and failing to disclose in the offering materials any risk that the transactions might not close or that if they did not close there was a risk of nonpayment. *Id.* ¶¶ 1, 12-14, 30.
>
> 3. CVR misrepresented and omitted material facts about the 340B program, including that: (1) the savings under the program benefit entities other than pharmacies; (2) the entities that purchase drugs under the program are under contract with pharmacies and getting them to switch to a new CVR pharmacy would be challenging; (3)

the proposed CVR pharmacies were niche, which would make them even less appealing to switch to for an entity buying drugs under the program; and (4) the 340B program is controversial, facing court challenges and facing hurdles by the Trump Administration. *Id.* ¶ 31.

4. CVR professed a $72 million transaction backed by Pistris Fund, which CVR claimed was one of the 300 largest private equity funds, yet the Pistris Fund "appears not to exist" and does not appear on the list of 300 largest equity funds. *Id.* ¶¶ 10, 13, 32.

## DISCUSSION

As explained above, Hoshida alleges that through the loan and the Note, CVR sold her a security through material misrepresentations and omissions of material fact and that the Defendants, by virtue of their positions with CVR, are liable under Oregon's securities laws. In their motion to dismiss, Defendants argue that the Note was not a security but simply a commercial loan, and, thus, they are not liable under ORS § 59.115(3).

"The fundamental purpose undergirding [the federal securities laws] is to eliminate serious abuses in a largely unregulated securities market." *Reves v. Ernst & Young*, 494 U.S. 56, 60 (1990) (quoting *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 849 (1975)) (quotation marks omitted). Congress broadly defined "security," recognizing "the virtually limitless scope of human ingenuity, especially in the creation of 'countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.'" *Id.* at 60-61 (quoting *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946)).

Similarly, Oregon's definition of "security" includes as many as 19 different categories of financial instruments. *See* ORS § 59.015(19)(a). And like the United States Supreme Court, the Oregon Supreme Court recognizes that certain people will "lie awake nights endeavoring to conceive some devious and shadowy way of evading the law." *See State v. Whiteaker*, 118 Or. 656, 661 (1926) (declining "to lay down any hard and fast rule to determine" what is a

security and acknowledging that "[i]t was the intention of the [Oregon] Legislature to use the term 'securities' in a broad sense, not a literal one"). Oregon courts, therefore, interpret Oregon securities law liberally to "afford the greatest possible protection to the public." *Bergquist v. Int'l Realty, Ltd.*, 272 Or. 416, 423 (1975) (quotation marks omitted). As discussed below, the framework is similar under the federal securities laws.

## A. Joint and Several Liability Under Oregon Securities Law

In Oregon, the seller of a security is liable to the purchaser when a security is offered or sold in Oregon "by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading." ORS § 59.115(1)(b). When the sale of a security is made by a business entity, others who are affiliated with that entity may be held "jointly and severally liable," if they directly or indirectly control the business entity, are officers or directors of that entity, are a manager of that entity (when the entity is a limited liability company), or if they otherwise participate or materially aid in the sale. ORS § 59.115(3).

## B. Whether Hoshida's Note is a Security

Under Oregon securities laws, the first example stated on the list of financial instruments subject to those laws is a "note." ORS § 59.015(19)(a). To protect the investing public, the United States Supreme Court in *Reves* articulated a test for determining whether a note is a security for purposes of federal securities laws. 494 U.S. at 66-67. The *Reves* test begins with the presumption that a note *is* a "security." *Id.* at 67. This presumption, however, may be rebutted if the note "falls into certain judicially created categories of financial instruments that *obviously are not securities or* if the note in question bears a 'family resemblance' to notes in those categories." *Lahn v. Vaisbort*, 276 Or. App. 468, 484 (2016) (quoting *McNabb v. SEC*, 298 F.3d 1126, 1131 (9th Cir. 2002)) (emphasis added). Defendants argue that Hoshida's Note bears a

PAGE 7 – OPINION AND ORDER

"family resemblance" to notes in the categories of financial instruments that obviously are not securities and that Hoshida fails plausibly to allege otherwise.

In *Reves*, the United States Supreme Court announced a four-part test for determining "family resemblance" to those judicially created categories of financial instruments that obviously are not securities. 494 U.S. at 66-67. The four factors direct a court to consider: (1) the motivations of reasonable buyers and sellers for entering the transaction; (2) the plan of distribution of the instrument; (3) the reasonable expectations of the investing public; and (4) whether there are any risk-reducing factors that would make application of the securities laws unnecessary. *Id.*; *see also Lahn*, 276 Or. App. at 483-84 (applying the *Reves* test in Oregon). Further, these factors should be considered as a whole, and no single factor on its own determines whether a note's presumptive status as a security has been sufficiently rebutted. *SEC v. Wallenbrock*, 313 F.3d 532, 537 (9th Cir. 2002).

### 1. Motivation of Reasonable Buyers and Sellers

Under the first factor, a court looks to the motivations of a reasonable buyer and seller. If the seller's purpose "is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a 'security.'" *Reves*, 494 U.S. at 66. Conversely, a loan, or note, is "less sensibly described" as a security when it is used "to facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose." *Id.*

Defendants argue that CVR planned to use Hoshida's money to purchase several pharmacies and that use falls under the exception in *Reves* for "other commercial . . . purpose." Defendants rely on the district court decision in *Raze v. Walbridge* (*Raze I*), 2021 WL 2274194 (D. Or. Apr. 14, 2021), *report and recommendation adopted in part, rejected in part*, 2021

PAGE 8 – OPINION AND ORDER

WL 2036660 (D. Or. May 21, 2021). In *Raze I*, the plaintiff provided funds that were used to purchase a mobile home park, and the promissory note at issue *was secured by a deed of trust on that mobile home park. Id.* at *1 (emphasis added). The U.S. Magistrate Judge agreed with the defendants that the plaintiff had not plausibly alleged that the promissory note was a security. *Id.* at *7. In discussing motivation, the U.S. Magistrate Judge concluded that "the Defendants' purpose was not to raise money for the general use of a business enterprise or to finance substantial investments, but to provide funds for the exclusive commercial purpose of purchasing the Mobile Home Park." *Id.* at *5.

The undersigned adopted the Findings and Recommendation in part and stated:

> The Court agrees that allowing Raze to replead his securities fraud
> claim would be futile. Raze's securities fraud claim fails because
> the Note is not a security. There is no allegation Raze could make
> that would transform the Note into a security. Because Raze
> attached the Note to his Complaint, see ECF 1-1, the Court had the
> benefit of reviewing the Note when ruling on Defendant's motion
> to dismiss. The Court adopts Judge Acosta's recommendation that
> Raze's securities fraud claim be dismissed with prejudice.

*Raze v. Walbridge* (*Raze II*), 2021 WL 2036660, at *3 (D. Or. May 21, 2021). The note in *Raze* was found not to be a security largely because it was secured by a deed of trust on the mobile home park that the funds were used to purchase, and thus it had a "family resemblance" to a mortgage, which is not a security. *See Raze I*, 2021 WL 2274194, at *7. Further, the undersigned only adopted the *recommendation* of *Raze I* (not the *findings* of the U.S. Magistrate Judge). To the extent that the Court's Order in *Raze II* can be misconstrued as concluding that an *unsecured* note used to purchase major assets may be considered "other commercial . . . purpose," as that term is used in *Reves*, the Court now rejects that construction.

Hoshida argues that CVR's business was purchasing multiple pharmacies, and thus the money raised from the Note was to be used for the "general use of a business enterprise" of

PAGE 9 – OPINION AND ORDER

CVR. *See Reves*, 494 U.S. at 66. Hoshida adds that her funds were not going toward the sorts of *minor* or *consumer* uses listed in *Reves* for non-securities. She adds that facilitating the purchase of ten pharmacies cannot fall within "other commercial . . . purpose" because under the statutory construction canon of *ejusdem generis*, that term is narrowed by the specific items listed before. *See* Antonin Scalia and Bryan A. Garner, *Reading Law* (2012) (explaining the doctrine). Thus, Hoshida argues, "other commercial . . . purpose" refers to other limited-scope purposes like the purchase of a minor asset, which is significantly different from broader purposes like general business use and substantial investments. The Court agrees with Hoshida.

As alleged by Hoshida, the stated purpose of the Note was to facilitate the purchase of ten pharmacies and to finance general operations during the closing period. Under the *Reves* test's motivation factor, a reasonable seller's purpose for this Note fits squarely within both "general use of a business enterprise" and "to finance substantial investments." *See id.*; *see also Sound Foundation v. SCI Fund II, LLC*, 2022 WL 225089, at *12 (D. Or. Jan. 25, 2022) (holding that when a venture capital firm's sole purpose for the money was to invest in high-risk businesses, the motivation factor weighs in favor of finding the note to be a security); *Lahn*, 276 Or. App. at 487 (holding that when money was intended for the business's purpose of developing a mixed-use property, the motivation factor weighs in favor of finding the note to be a security).

Additionally, a reasonable buyer would be interested in the Note primarily as an investment to generate profit. The Note at issue here offered a 35 percent profit over a six-month term. *See Lahn*, 276 Or. App. at 487 (concluding that the motivation factor weighed in favor of finding the note to be a security when the promised profit was 12 percent per year); *see also Sound Foundation*, 2022 WL 225089, at *13 (holding that the motivation factor weighed in favor of finding the note to be a security when the return was 12.75 percent per year). In summary, the

PAGE 10 – OPINION AND ORDER

motivations of reasonable buyers and sellers here weigh in favor of finding the Note to be a security.

### 2. Plan of Distribution

Under this factor, *Reves* advises courts to consider whether the note "is an instrument in which there is common trading for speculation or investment." *Reves*, 494 U.S. at 66 (quotation marks omitted). A small number of purchasers may be evidence that a note is not a security, but such evidence "must be weighed against the purchasing individual's need for the protection of the securities laws." *McNabb*, 298 F.3d at 1132.

Relying on *Lahn*, Defendants argue that this factor tips toward finding the Note not to be a security because Hoshida's allegations show it was not offered and sold to the public generally but arose from a limited, private transaction. *See Lahn*, 276 Or. App. at 488 (concluding at summary judgment that a sale that was not "broadly solicited" to the public did not meet this factor). Defendants also argue that the Note is like the note in *Raze I*, which was sold to one person. *See* 2021 WL 2274194, at *6. In *Raze I*, however, this factor was found to be neutral, because the court followed the Ninth Circuit's instruction in *McNabb* to consider "the purchasing individual's need for protection." *Id.*

Whether similar alleged securities were sold to anyone other than Hoshida is unknown at this time. Even if the Court assumes that the alleged security was sold only to one person, this is not dispositive. As previously discussed, a court must consider the needs of unsophisticated, individual investors, like Hoshida, who need the protections afforded by federal and state securities laws. *See McNabb*, 298 F.3d at 1132. Thus, the Court finds this factor to be neutral, at most. *See, e.g.*, *id.*; *Raze I*, 2021 WL 2274194, at *6.

PAGE 11 – OPINION AND ORDER

### 3.  Reasonable Expectations of the Investing Public

In evaluating this factor, a court should assess whether a reasonable member of the investing public would consider the Note to be an investment. This may be so "even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not 'securities' as used in that transaction." *Reves*, 494 U.S. at 66. Under this factor, the opinion of the purchasing party is irrelevant. It is an objective analysis, considering a reasonable investor. *McNabb*, 298 F.3d at 1132.

Defendants argue that a reasonable investor would consider the Note to be a commercial loan, like the note at issue in *Raze*, because the Note is described as facilitating the acquisition of specific assets (namely, the ten pharmacies), like the single mobile home park in *Raze*. The court in *Raze*, however, concluded that the investing public would not consider the note to be an investment, because the note was a "*secured* note used to purchase real property." *Raze I*, 2021 WL 2274194, at *6 (emphasis added). Although it was a note "described as a promissory note used to purchase real property," it was "secured by said real property." *Id.* Further, a reasonable person would consider a promissory note secured by real property more like a commercial transaction than a security. As previously discussed, however, Hoshida's investment was unsecured. This makes *Raze* inapposite.

Defendants also focus on the fact that the Note had a short term, making it appear as a business loan to a reasonable investor. As the court in *Sound Foundation* held in similar circumstances, however, despite the "first blush" of a short-term loan appearing to be more like a commercial loan, upon further analysis, a reasonable investor would consider it an investment. 2022 WL 225089, at *13. The persuasive factors in that case included the high fixed interest rate (signifying risk) and the fact that the loan was made to a "venture capital fund" instead of to an operating business. *Id.* Similar factors are present here. Additionally, the Note itself states that

PAGE 12 – OPINION AND ORDER

the lender makes the loan for "investment only," further showing that a reasonable person would consider the Note to be precisely as it was described, for "investment." *See also Lahn*, 276 Or. App. at 488 (stating that the third factor is closely related to the first factor and relying on that analysis to conclude that the third factor supported a finding that the note was a security).

Considering the unsecured status of the Note, the high rate of interest, the Note's self-identification as an "investment," and the fact that Defendants were not an operating business but more like a venture capital fund, the Court finds that this factor strongly supports finding that the Note is a security. *See Wallenbrock*, 313 F.3d at 539; *Sound Foundation*, 2022 WL 225089, at *13; *Lahn*, 276 Or. App. at 488.

### 4.  Risk Reduction

For this factor, courts consider whether any other "regulatory scheme significantly reduces the risk of the instrument, thereby rendering application" of a securities law unnecessary. *Reves*, 494 U.S. at 67. The Supreme Court in *Reves* emphasized the importance of any government program that might regulate the instrument. *Id.* The risk-reduction factor is "likely to favor a determination that a note is a security when 'no other regulatory scheme significantly reduced the risk of the instrument beyond resort to normal collection processes.'" *Lahn*, 276 Or. App. at 488-89 (quoting *Tai-Si Kim v. Kearney*, 838 F. Supp. 2d 1077, 1095 (D. Nev. 2012)).

Here, there are no identified risk reduction factors applicable to the Note. The absence of risk-reduction factors like collateral or insurance supports the conclusion that the Note is a security. *Reves*, 494 U.S. at 69. Indeed, several courts have found that "the absence of collateralization increases the risk of a loan because, in case of default, the lender or investor often has limited recourse to recoup the investment." *Wallenbrock*, 313 F.3d at 539.

In *Lahn*, the court concluded that the inability of the defendants to cash out every investor in full meant that any one investor (like the plaintiff) was left open to significant risk. *Lahn*, 276

PAGE 13 – OPINION AND ORDER

Or. App. at 489. Thus, the court concluded that this factor supported the conclusion that the note was a security. *Id.* In *Sound Foundation*, the defendants argued that they offered private stock as collateral to secure the note, but the court held that private stock is not readily marketable. 2022 WL 225089, at *13. As a result, the court determined the risk reduction factor was neutral in assessing whether the note at issue was a security. *Id.*

Conversely, as previously discussed, in *Raze I*, the court concluded that the note was not a security, in part because the note to fund the purchase of the mobile home park was secured by a deed of trust recorded against the mobile home park itself. 2021 WL 2274194, at *6. Although Raze argued that the interest was not secured because 40 percent of the property value was in the mobile home structures themselves, *id.* at *1, the court concluded that the risk reduction factor of having some collateral weighed against labeling the note a security. *Id.* at *6.

In their motion to dismiss, Defendants argue that the lack of collateralization on a note is not *determinative* in concluding that the risk reduction factor favors a finding that the note is a security. Defendants also contend that the short term of the Note reduces its risk, and that any risk to Hoshida arises from ordinary credit risk ("the possibility of nonpayment") rather than from the types of investment risk that the Oregon's securities laws were intended to address.

Defendants also focus heavily on the short-term duration of the loan and that it had a fixed repayment obligation regardless of Defendants' profitability or success, asserting that these facts support finding that the Note should not be considered to be a security. Those features of the Note, however, do not preclude characterizing the Note as a security under the *Reves* test. *See, e.g.*, *McNabb*, 298 F.3d at 1129 (involving a fixed repayment obligation); *Lahn*, 276 Or. App. at 470 (same); *Sound Foundation*, 2022 WL 225089, at *13 (same); *Wallenbrock*, 313 F.3d at 535-36 (involving short-term loans); *Sound Foundation*, 2022 WL 225089, at *13 (same).

PAGE 14 – OPINION AND ORDER

Like the note in *Lahn*, the Note here had no collateral, which left Hoshida open to significant risk. *See* 276 Or. App. at 489. And like the note in *Reves*, there was no insurance to reduce the risk. *See* 494 U.S. at 69. Nor is there any regulatory program applicable here. *See id.* Thus, the fourth factor supports the conclusion that the Note is a security.

## C. Whether Defendants Are Subject to Nonseller Liability

As discussed, Oregon securities law imposes liability on sellers of securities who violate ORS § 59.115(1). The statute also imposes joint and several liability on broad categories of nonsellers, including "every partner, limited liability company manager, including a member who is a manager, officer or director of such seller." ORS § 59.115(3).

Defendants argue that Hoshida fails to state a claim against them because Hoshida fails to allege *facts* showing Defendants held control over CVR or that they materially aided or assisted in the challenged transaction. Defendants may be correct, at least for some Defendants,[2] but neither control nor transactional assistance is required. As discussed, there are other ways to hold Defendants liable under ORS § 59.115(3).

Hoshida alleges that Joseph Horsfall, Brett Monson, and Adam Booth are all officers of CVR. Compl. ¶¶ 3-5. Under the plain text of ORS § 59.115(3), all three may be found jointly and severally liable for CVR's sale of a security to Hoshida based on their roles with the seller. Hoshida also alleges that Legacy is a managing member of CVR. *Id.* at ¶ 6. Thus, Legacy similarly may be jointly and severally liable under the plain text of ORS § 59.115(3).

---

[2] In addition, Hoshida alleges that Defendants Monson and Horsfall signed the solicitation documents and communicated with Hoshida regarding the solicitation and Note. Compl. ¶¶ 34-35. This is sufficient at the pleading states to allege that these two Defendants "participate[d] or materially aid[ed] in the sale." ORS § 59.115(3); *see Prince v. Brydon*, 307 Or. 146, 150 (1988); *Adams v. Am. W. Secs., Inc.*, 265 Or. 514, 527 (1973).

## CONCLUSION

The Court DENIES Defendants' Motion to Dismiss, ECF 9.

**IT IS SO ORDERED**.

DATED this 24th day of June, 2026.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge